Bouldin, J.
delivered the opinion of the Court.*
The defendant was indicted in the Superior Court of Henrico, for a violation of the act of February, 1825, prohibiting the vending of tickets in lotteries not authorised by *722 the laws of this State, and prohibiting the opening of'offices that purpose. On his trial, it appeared that he sold papers signed “Miens,” (of which firm he was a partner,) whereby Miens guarantee to the holder what the number Qn tjiat paper might draw: the name of the lottery appears on the papers, as also the number. After the whole evidence had been given to the jury, and the cause argued, the Judge instructed the jury that such a paper as the one above described, sold by the proprietor of the lottery, is a lottery ticket, though called by him a guarantee; and that if such paper be sold by another, as a substitute for a lottery ticket, the seller being in possession of the ticket, and holding it for the use of the buyer, and this done to evade the operation of the law, suoh sale is a violation of the law. But, previous to giving these instructions, the Judge discusses at large the question whether the act of 1825 should be construed as a remedial law under the operation of the-act of 1802, and he concludes that it must be so construed, and says, that such conclusion brings him to the question, what is the character of the papers before described ? In answer to that question, he gives one instance, in which he says, such papers are lottery tickets, when sold by the proprietor of the lottery; and one other instance, in which he says their sale would violate the law, when made by others than the proprietor, to evade the statute. He then states the case of a guarantee which would be innocent, and submits to the jury whether the defendant comes under one or the other of these classes of cases. The jury found the defendant guilty, and his counsel moved for a new trial, on the ground, that the opinion delivered by the Judge was a misdirection of the jury; and the questions thence arising are adjourned to this Court. The cause has been argued with great ability both by the Attorney General and the defendant’s Counsel. On the part of the defendant, it is contended, that the act of 1825 is a penal law unaffected by the act of 1802; first, on the ground that the latter act applies to no other laws than those in existence at the time *723 it was passed, and also that the act of 1825 is not an act to suppress or discourage gaming within the meaning of the act of 1802; and a majority of the Court are of opinion, that the act of 1825 ought to be construed as all other penal laws are construed; and in this opinion. Judges Brockenbrough, Jlllen and Summers do not concur.
It is then contended, and with great force of argument, that the opinion of the Superior Court, that the said act of 1825 should he liberally expounded, was a substantive instruction to the jury; and if so, that opinion being deemed erroneous by this Court, a new trial should be directed of course. We have given this argument our best attention. By some of the Court it is contended, that this conclusion of the Judge, from the opinion itself, forms no part of the instructions given to the jury. It is perfectly evident, that the range of argument adopted by him was wholly designed to shew the enlarged ground, on which he supposed the instructions which were to follow might be justified. We can sec no distinction between this and other cases, where the argument is wrong and the judgment is right. The object of the Judge was to tell the jury what character the law stamps on the papers before the jury, with reference to the case then before the Court; and if that character be given truly and according to law, it matters not whether the Judge would have so delineated it, if he had not supposed greater latitude was to be taken in the construction of the act than is approved by this Court. But, it is contended, that the eircumstances in the cause embrace questions of fact, which might have been solved by the jury in some other way, than simply giving an affirmaliye or negative answer to the propositions laid down by the Court; and if so, the direct opinion of the Judge, that the law should be so construed as to advance the remedy and suppress the mischief, assumes the character of operative instructions to the jury. This objection was enforced, by supposing cases with an Ingenuity, from which, at the time, there appeared to be no encape-, and supported by argument wholly unanswerable, *724 if the premises be true. But, is it true that the case allows ^ supp0siti0n that these guarantees (as they are called) might have been so sold as to be.without the range of either 0f the direct instructions of the Judge? And could the jury5 consistently with those instructions, find the defendant guilty, under the idea that the facts proved only a case of equal mischief? We think not.
The first and second propositions of the Judge embrace every possible case of a sale of the guarantees alluded to. The third states a guarantee not in the case. The first, of these propositions is, that such a paper, sold by the proprietor of the lottery, is a ticket; i. e. the sign or symbol of the holder’s interest in the wheel; the second states, what facts the jury must find to constitute guilt, if the paper was sold by any other than the proprietor; and no case can be conceived that falls not within a sale by the proprietor or some other person. We therefore think, that (this objection notwithstanding) this case must rest on the propriety of the instructions given to the jury. The objections made to the first of these instructions, are deemed by the Court by far the most important in the whole case, and the attention paid to them at the bar has been proportioned to their importance. The objection is, that the abstract general proposition is too broad; that supposing the fact, that lottery tickets might assume that form, if those who issue them so please, it should have been left to the jury to find the fact, whether they were issued as, and for, tickets; and further, the general allegation, that such papers issued by the proprietor, are tickets, is not law; for, there are cases in which such papers might be issued, where they could with no propriety be called the sign of the holder’s interest in the lottery, and so not tickets. In support of these objections, many cases were supposed, and with great propriety a demand made, that they should be fairly met and answered. The case supposed, at the time this demand was made, is extremely imposing, and an answer to it includes an answer-to the whole objection. It supposes the *725 aase of a guarantee, an insurance simply, as the word imports, that the prize drawn to a particular number shall be paid: that such contract is, or may be, different from the gale of a ticket; to prove which, it is among other things supposed, that he to whom the guarantee was made, was before owner of the ticket, or that, some one else was owner. This, it is said, is embraced by the terms of the instruc - tion, and the jury must have found the party guilty, had the supposed ease been true. An answer to this objection is found in the plain, legal and common sense meaning of the instruction itself. It affirms, that these papers are tickets, when sold by the proprietor of the lottery: that in such original direct undertaking, by him who holds the prize, the words “ I guarantee,” have no meaning different from “ I will pay;” and we can conceive no form of writing snore exactly answering the purpose of evincing the holder’s interest, in the lottery, and securing to him the receipt of the prize drawn. There is no imaginable case, where the holder of the paper in question has not an identity of rights with the holder of any other promise to pay the prize drawn. But, what is called the real ticket might, it is said, have been sold to another, and surely a guarantee that A. shall have the prize drawn by B’s ticket, is no sale of a ticket. There is nothing more true, than this objection in the form it is urged. But, we have before seen, that such papers, sold by the proprietor, are tickets, and he in that case has only sold two tickets of the same number, and bound himself to pay the prize drawn to each. Whether, therefore, the proprietor has before sold a ticket of the same number or not, the sale of the paper in the record is the sale of a ticket. But, the holder may have before-purchased the ticket, and it may have been destroyed or so obliterated, as that the holder needs such a paper as the one in question. To this objection the answer is, that the instructions of the Court plainly supposes an original sale, and by no fair construction can be made to embrace the «saao of such collateral undertaking. There was nothing *726 in the evidence, which, in the most distant manner, alluded to the state of facts supposed by this objection. If the ticket had been purchased out of the State, and after- ‘ wards the name or number is obliterated, and the proprietor within the State hand him another ticket of the same number, this is no sale of a ticket under the act, but evidence simply of the right acquired under a former sale and purchase: and yet, can it be seriously asked whether, when the Court is informing the jury that the sale of such tickets violates the law, that it would be needful to qualify the remark by a statement, that a delivery of such papers, which is no sale, will not have that effect ? The qualification the objection supposes, could not be annexed to the instruction given by way of exception to its general operation, because it would not be embraced in its general terms. The furnishing evidence of a former right, or giving further assurance for its enjoyment, comes with no propriety under the idea of a sale; and it was not necessary for the Court to have given that explanation to the jury, since it was entirely plain without it.
The second of the direct instructions to the jury, we think clear of difficulty. The facts there stated, constitute a sale of the ticket to all intents and purposes; nor is the sale less complete, because the ticket is not delivered. Neither does the fact of a superadded warrantee, make the least difference. The purchaser, by the legal effect of his contract, has a right to the ticket, and the seller to the stipulated price; and it is perfectly immaterial how involved and complicated a contract is; if it result in giving the seller the price, and the buyer title to the thing, it is a sale. It is difficult to place the fact of sale in a more clear light, than it is exhibited by the instruction itself; the seller holds the ticket, he sells the guarantee as its substitute; that guarantee contains stipulations binding the signer to the same effect as the ticket binds the proprietor, and the seller thenceforth holds the ticket for the buyer’s use. Whether the ticket be sold by that transaction, depends on what is here meant *727 by holding the ticket to the use of the buyer: it can mean nothing hut this, that the buyer is to have the avails of ticket, and the use thereof to get those avails; and what other title can a man have to a bond payable to himself and In his pocket? We confidently say none. The Counsel raeked their invention to state cases embracing all the propositions in this instruction, and in which the ticket would not he sold; but, wo think they entirely failed.
The opinion here delivered is not In conflict with the authorities cited; they prove clearly that the thing plainly forbidden must be done, or punishment cannot follow. We deem it unnecessary to go through those cases, but will refer to some of the most prominent. In Mary Mitchell’s Case, 2 East, 936, the Court decided in a prosecution for forgery, that the terms warrant or order in the statute, did not cover the case of an order for, or request to, deliver goods not belonging to the party in whose name the order was drawn: this was certainly a very strict construction of the statute, and subsequent Judges unwillingly have conformed to it. But, does any one think that a rule so rigid would have been adopted in a case of misdemeanor ? But, after the construction of the act was thus settled, the question did not turn on the form of doing the thing, but whether it was done. In Hunter’s Case, 2 East, 928, the defect was in the indictment which did not set forth and aver facts constituting a receipt. It is evident, that had all the actual facts been stated in the indictment the party would have been deemed guilty, but be that as it may, the question in all these cases was, whether the instrument in itself or by proper averments and proof was the thing, the forgery of which, the Legislature declared should be felony. But, in deciding whether the form of the instrument forged was within the statute, the Courts always governed themselves by the answer to the question whether the legal effect of it, if genuine, would be the thing forbidden, and finally came to the conclusion now familiar to all, that the counterfeit might be forgery, though the instrument was *728 so made, as if genuine, it would not be effectual to its purpose, provided it was so near like that which would be effectual, as to deceive ordinary observers It is decided in j^ocket’s Case, and several others, that the instrument charged to be forged may. be called warrants, provided that in legal effect they are so; even though they pass currently under different names. The question in all these cases is, whether the thing done, is the thing forbidden, and the form of doing it is of little importance.
The following is to be entered as the judgment of the Court.
The Court is opinion, and doth decide, that the instructions given to the jury, as applicable to this case, were right and proper; and, therefore, no new trial ought to be granted to the defendant on the ground of misdirection.

 Absent, Dade and Semple, J.